IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| KAREN COLLET, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 06-0747-CV-W-ODS ) |
| MICHAEL J. ASTRUE,[1] Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

ORDER AND OPINION AFFIRMING COMMISSIONER'S FINAL DECISION DENYING
DISABILITY INSURANCE BENEFITS

Pending is Plaintiff's request for review of the Commissioner's final decision denying her application for benefits under Title II of the Social Security Act. For the following reasons, the Commissioner's decision is affirmed.

I. BACKGROUND

Plaintiff was born in February 1953 and has completed high school and one semester of college. She has prior work experience as a data entry clerk and customer service representative; both occupations are classified as sedentary and semi-skilled. In late March 2002, Plaintiff took advantage of an early retirement program offered by her employer. One of the terms of this program allowed Plaintiff to obtain unemployment benefits until February 2003, and pursuant to this provision she both sought and obtained unemployment benefits.

When she originally filed for disability benefits, Plaintiff alleged her disability began on her last day of work. At some point, she realized this was inconsistent with her sworn statement – necessarily made as part of her claim for unemployment benefits

---

[1]On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security and should, therefore, be substituted as the Defendant in this case. Fed. R. Civ. P. 25(d)(1).

– that she was able to and actively seeking work. Consequently, at the hearing she amended her onset date to March 1, 2003.

Plaintiff began seeing Dr. Anne Sly in March 2001; at that time, Plaintiff reported chronic hypertension/anxiety controlled with medication, pain in her knees as a result of degenerative joint disease, and chronic weight gain. Dr. Sly described Plaintiff as having a problem with obesity. R. at 96. In September 2001, Plaintiff completed a Personal History in conjunction with a physical and indicated she suffered from arthritis, headaches, and pain in her knees. R. at 93. Her weight at that time was 272 pounds. R. at 91. In March 2002, Dr. Sly diagnosed Plaintiff as suffering from obesity (she weighed 279 pounds at the time) and degenerative joint disease in her knees. R. at 88. However, no inflammation was observed in Plaintiff's knees. R. at 89.

In October 2002, Plaintiff complained of pain in her arm that had existed since the preceding summer and chronic aches in her knees both with and without exertion. Plaintiff's weight was 276 pounds, and Dr. Sly continued her diagnosis of obesity. Physical examination revealed no redness, fluid, tenderness, or instability. Dr. Sly told Plaintiff to increase her dosage of Glucosamine with Chondroitin. R. at 83-84. X-rays taken in November 2002 confirmed degeneration in the knees. R. at 78. Plaintiff next saw Dr. Sly in June 2003 in connection with an apparent hernia. Plaintiff described her diet as consisting of barbeque and fried food, resulting in "excessive" weight gain; she weighed 294 pounds. R. at 80-81. She reported her knee was "still painful periodically." R. at 19.

Dr. Steven Hendler conducted a consultative exam later in June. He noted marked crepitus in the right knee and mild crepitus in the left knee, along with limitations in range of motion. Hoe opined Plaintiff "would likely have difficulty tolerating six hours daily standing and walking activities. She would likely be able to perform up to two hours per day of standing and walking on a consistent basis." R. at 97-99.

Plaintiff saw Dr. Sly several times between August 2003 and March 2004 for reasons unrelated to the medical conditions at issue here. R. at 131-48. In late April 2004, Plaintiff reported difficulty sleeping and Dr. Sly, suspecting Plaintiff suffered from sleep apnea, referred Plaintiff for a sleep study. Plaintiff weighed 289 pounds, and Dr.

Sly advised her to lose weight by altering her diet and exercising. R. at 128. By June 2, Plaintiff had not started exercising. Dr. Sly referred Plaintiff to Dr. Gerald Dugan, an orthopedic specialist. R. at 126.

Dr. Dugan saw Plaintiff on June 22, 2004. She told Dr. Dugan she "stiffens if she sits for any period of time" and experiences catching, grating and tightness in her knees. He described Plaintiff's past treatment as "conservative" and noted anti-inflammatories and glucosamine provided little comfort. Dr. Dugan ultimately confirmed the diagnosis of degenerative joint disease in both knees and obesity. He discussed "the risks and potential complications" associated with knee replacement surgery and ultimately recommended she "work on weight control and therapeutic exercises. She is to ice and elevate. She is to take anti-inflammatory of choice. She will return for follow-up in the future as needed." R. at 149-51. There is no record of any further visits to Dr. Dugan.

On August 2, Plaintiff saw Dr. Sly complaining of hypertension and anxiety. Plaintiff's weight had increased to 288 pounds and she had not been taking her blood pressure medication regularly. R. at 124. By September 27, 2004, Plaintiff had lost ten pounds and was "planning weddings for both daughters." R. at 120.

The last record of a visit to Dr. Sly is from January 20, 2005. By this time, Plaintiff was using a CPAP machine to help her sleep and reported positive results. Although her weight is not indicated, Dr. Sly noted Plaintiff had been "eating somewhat compulsively" and had gained – and still needed to lose – weight through a combination of diet and exercise. Plaintiff also reported pain and stiffness in both knees. R. at 118-19.

While these are the last records of any treatment by Dr. Sly, the Administrative Record includes a Medical Source Statement ("MSS") she partially completed in May 2005. The MSS indicates Dr. Sly last saw Plaintiff in May 2005, but as stated the January 2005 report is the last one included in the Record. The MSS also references the x-rays taken in November 2002 that showed bilateral osteoarthritis and a consultation with an orthopedist in June 2004 confirming "advanced patella femoral arthrosis [and] complete medial joint line collapse." Dr. Sly confirmed the only treatment she prescribed was ice, glucosamine/chondroitin, and exercise, which did not alleviate

3

Plaintiff's pain. Dr. Sly opined Plaintiff's pain would increase and "eventually require bilateral knee joint replacements." Dr. Sly did not fill out those portions of the MSS intended to gather information about Plaintiff's residual functional capacity, but wrote that Plaintiff's "primary disability is due to pain with all weight bearing activity. Pain is immediate and persistent, impairing mobility, ambulation, [and] prolonged standing." R. at 152-56.

The hearing was held on November 1, 2005; Plaintiff reported she was 5'7" and weighed 287 pounds. R. at 172-73. She estimated she could stand for ten minutes before needing to sit down, could walk a block or do her grocery shopping before needing to stop and rest, and could sit without reclining for fifteen to twenty minutes before reclining. R. at 166-67. Plaintiff explained she spends one to two hours per day reclining, but did not explain what symptoms prevented her from sitting in a normal seated position; in other words, Plaintiff did not describe any pain or discomfort that prevented her from sitting normally. R. at 167-68. Plaintiff had not started exercising as directed by Dr. Sly or Dr. Dugan, and has attempted to lose weight by eating less. R. at 168, 173.

The ALJ solicited the testimony of a Vocational Expert ("VE"). When asked to assume a person of Plaintiff's age, education and work experience with the ability to lift and carry ten pounds, stand and walk fifteen minutes at a time and a total of two hours a day, sit six hours a day with normal breaks, and with limited ability to climb stairs, the VE testified such a person could perform the past relevant work of data entry clerk or customer service representative. Such a person would also have skills transferable to such jobs as a receptionist and telephone operator. R. at 175. However, if the person was required to elevate their legs for two hours a day, no jobs would be available. R. at 175.

The ALJ noted Plaintiff had a very stable work history, but other facts in the Record detracted from her credibility. Plaintiff left her job due to a retirement buyout, not for medical reasons. She claimed to be suffering from debilitating knee pain, but applied for and received unemployment benefits, and her description of her daily activities did not appear to be limited in a significant manner. Treatment for Plaintiff's

4

knees has been sporadic and conservative; similarly, her complaints to doctors have been sporadic and less severe than she testified to in the hearing.  Finally, no physician has suggested Plaintiff is as limited as she testified to in the hearing, and Plaintiff had not taken the steps suggested by her doctors in an attempt to ameliorate her medical problems.  The ALJ found Plaintiff's residual functional capacity to be consistent with the first hypothetical posed to the VE, and he concluded she retained the capacity to perform both her former work and other jobs in the national economy.

## II.  DISCUSSION

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole.  Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion.  [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion."  Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted).  Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision.  Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)).  Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.  Smith v. Schweiker, 728 F.2d 1158, 1161-62 (8th Cir. 1984).

### A.  Listed Impairment

Plaintiff first contends she satisfied the requirements of the listed impairment for major joint dysfunction and should automatically be found to be disabled.  Listing 1.02A requires, *inter alia*, "inability to ambulate effectively, as defined in 1.00B2b."  The definition of an inability to ambulate effectively requires "insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held

5

assistive device(s) that limits the functioning of both upper extremities." The Record reveals Plaintiff has not been prescribed or advised to use such an assistive device. The Record also reveals Plaintiff does not use such an assistive device. Therefore, the ALJ's conclusion that Plaintiff does meet or equal this listing is supported by substantial evidence.

### B. Residual Functional Capacity

Plaintiff next contends the ALJ erred in ascertaining her residual functional capacity. More specifically, she contends the ALJ did not properly evaluate her credibility and failed to accord proper weight to her treating physicians.

The critical issue is not whether Plaintiff experiences pain, but rather the degree of pain that she experiences. House v. Shalala, 34 F.3d 691, 694 (8th Cir.1994). The familiar standard for analyzing a claimant's subjective complaints of pain is set forth in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984) (subsequent history omitted):

> While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced. The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.
>
> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
>     1. The claimant's daily activities;
>     2. the duration, frequency and intensity of the pain
>     3. precipitating and aggravating factors;

6

> 4. dosage, effectiveness and side effects of medication;
> 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

739 F.2d at 1322.

The Court accepts Plaintiff's argument that her subjective complaints of pain cannot be discounted or ignored simply because they are not fully corroborated by objective medical evidence. However, Plaintiff's testimony is contradicted by other evidence in the record. Plaintiff was told to take glucosamine/chondroitin and ibuprofen, and lack of strong pain medication is inconsistent with subjective complaints of disabling pain. See Richmond v. Shalala, 23 F.3d 1441, 1443-44 (8th Cir. 1994). Plaintiff initially indicated she could not work at a time she had applied for unemployment benefits. This inconsistency is not fatal to Plaintiff's claim, but it is a factor that can be considered. Plaintiff did not leave her job due to disability, and her daily activities are inconsistent with the limitations she described.

The most important consideration may be the medical records, which at worst contradicts and at best fails to support Plaintiff's claim. They demonstrate Plaintiff's sleep apnea and hypertension were controlled satisfactorily. Plaintiff did not consistently report experiencing pain in her knees, and she did not report the degree of incapacity she described in her testimony. Plaintiff did not take the recommended steps to alleviate her symptoms, such as lose weight or exercise. Plaintiff emphasizes her difficulty with strenuous activity due to pain in her knees, but she did not participate in water aerobics to avoid bearing weight on her knees as suggested by her doctors. The failure to follow a physician's advice is inconsistent with complaints of disabling pain. E.g., Choate v. Barnhart, 457 F.3d 865, 872 (8th Cir. 2006).

Finally, the doctors' opinions do not support reversal. Generally speaking, a treating physician's opinion is entitled to deference. This general rule is not ironclad; a treating physician's opinion may be disregarded if it is unsupported by clinical or other

data or is contrary to the weight of the remaining evidence in the record. E.g., Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996). In this case, it is not clear Plaintiff's doctors ever actually described Plaintiff's functional capacity or functional limitations. Dr. Sly declined to fill out that portion of the assessment, leaving it to Dr. Dugan to complete – but Dr. Dugan did not do so (and, having seen Plaintiff on only one occasion, Dr. Dugan hardly qualifies as a treating physician. See Thomas v. Sullivan, 928 F.2d 255, 259 n.3 (8th Cir. 1991)).

Most significantly, nothing in Plaintiff's medical records – either in the reports of her complaints or the opinions of the doctors – suggests Plaintiff is unable to sit normally or otherwise perform work at a sedentary level. Plaintiff emphasizes Dr. Dugan's advice that she elevate her legs, but the Record does not reflect Dr. Dugan advised her to do so for two hours per day or that she was unable to sit normally for six hours out of an eight hour workday. In addition, as noted earlier, Dr. Dugan also advised Plaintiff to participate in water aerobics and lose weight – aspects of his advice she has not abided by.

### III. CONCLUSION

The Record as a whole contains substantial evidence supporting the ALJ's decision, including particularly the absence of any medical evidence or opinion Plaintiff is unable to function at a sedentary level, her failure to follow doctors' instructions, and inconsistencies between Plaintiff's testimony and other aspects of the Record. The Commissioner's decision to deny benefits is affirmed.

IT IS SO ORDERED.

DATE: June 6, 2007

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT